112  127
s 112  130

## PATNODE v. DARVEAU.

FRAUDULENT CONVEYANCES—EQUITABLE MORTGAGE.

A deed which, though intended merely as security, is absolute in form, will not, if executed for the purpose of delaying creditors, be adjudged an equitable mortgage at the solicitation of the debtor.

### ON REHEARING.

1. FRAUDULENT CONVEYANCES—HOMESTEAD.

Since a debtor's homestead is not subject to the claims of creditors, a conveyance of it for the purpose of placing it beyond their reach does not preclude him from having the deed declared a mortgage, if the circumstances justify such relief.

2. REHEARING—EVIDENCE—AFFIDAVITS.

An affidavit filed in the Supreme Court upon rehearing cannot be considered as evidence in the cause.

3. SAME—COSTS.

Costs upon rehearing were disallowed where the former decision was vacated upon facts that were not called to the attention of the court upon the original hearing.

Appeal from Alpena; Kelley, J. Submitted February 5, 1897; original opinion, for reversal, March 17, 1897. Rehearing granted April 27, 1897; final opinion, vacating former decision, July 13, 1897.

Bill by Adolphus Patnode against Solomon Darveau and the Alpena County Savings Bank to declare a deed a mortgage, and to redeem. From a decree for complainant, defendants appeal. Affirmed.

*Joseph H. Cobb*, for complainant.

*J. D. Turnbull*, for defendants.

HOOKER, J. The complainant was the owner of a building and a stock of goods. Upon the former was a

mortgage of $400, held by a Mrs. Slee, and he was indebted to other persons.    He made a deed of the premises to the defendant Darveau, and afterwards, within a short time, sold the stock of groceries, and paid his unsecured debts, with slight exceptions, and furnished the defendant Darveau with $360, with which, and $40 of his own money, Darveau paid the mortgage, and took an assignment of it to himself.    The complainant claims that the bill in this cause is a bill to declare the deed a mortgage, and to redeem, and is based on the theory that the deed was given to secure Darveau for the amount of said mortgage, upon his agreement to pay it, and the further sum of $100, which he was to receive for his assistance in preventing a threatened foreclosure of the mortgage, and in assisting the complainant in regard to his other affairs. The bank is made a party by reason of its interest in the premises by virtue of a mortgage for $300, given to it by the defendant Darveau.

The answer of the principal defendant denies the allegations of the bill, and alleges that the premises were deeded to him in pursuance of a purchase for $800.

The evidence shows to our complete satisfaction that, up to a few days before the mortgage was given to the bank, both parties treated the deed as security for an amount which complainant owed to Darveau.    They do not agree as to their negotiations regarding a settlement. Complainant claims that, on discovering that Darveau had made the mortgage to the bank, he asked the defendant Darveau to deed the property to him, and take security for what was his due; but Darveau refused.    On the other hand, Darveau testified that he was always willing to receive the amount his due, and deed the property; that the complainant finally wanted to sell him the place, and, when asked what he wanted for it in cash, he said the balance of the $800 (that sum being named in the deed as the consideration ).    To this Darveau replied that he would not give it, but would give him $300 cash, and a second mortgage for the remainder, but complainant

would not take a second mortgage, and they parted. Darveau further testified that later in the day they agreed upon the bargain, and that there was $300 due the defendant Darveau, which he was to have a week to borrow on the place, and, if he did not get it in a week, the complainant would get it elsewhere; but defendant borrowed it at the savings bank. To do this, he paid $12 for an abstract, which increased the amount due him; and he then concluded that he would either keep that money himself, and deed the premises, or he would give complainant a mortgage for $500, which complainant agreed to, and accepted upon the promise that defendant Darveau should have the bank mortgage discharged. The evidence shows that complainant knew what he was doing, and he says that he took the mortgage because it was all that he could get. He recorded it at once, and from that time on to the time the suit was begun—a period of several months—the parties had talks about a settlement, with a view to payment of the defendant Darveau, and his redeeding the property. Meantime $275 of the amount borrowed lay in the bank, Darveau holding a certificate of deposit for it, $25 having been taken by him in cash when the money was borrowed. We are impressed with the belief that the only obstacle to a settlement was a disagreement as to the amount due the defendant Darveau. The affair culminated in this suit. From a decree for the complainant, the defendants appeal.

There is much to support the claim that the real purpose for which this deed was made was to protect the complainant from loss through an attack by his creditors, which seemed imminent. He unqualifiedly says so more than once in his testimony, and the testimony of the defendant Darveau corroborates it. It is not clear that he designed to ultimately defeat his creditors, and he was attempting to sell his goods, that he might pay, and succeeded in doing so; but it is evident that he was endeavoring to gain time by putting his property into defendant

112 MICH.—9.

Darveau's hands, and there is evidence that he desired to do the same with the stock. Under the well-known rule, equity will not undertake to relieve the complainant by setting aside a conveyance made for such a purpose, or doing it indirectly by treating as a mortgage a fraudulent deed. Perhaps the complainant knew this when he made sure of the $500 mortgage upon the new deal. This was a valid transaction, and, as we understand it, the defendant Darveau professes to be willing to cause the other mortgage to be discharged. Just why it has not been done does not appear. It would seem that he should do so, but we cannot make a decree to that effect upon this record.

The decree is reversed, and the bill is dismissed, with costs of both courts, but without prejudice to further proceedings with reference to the discharge of said mortgage.

The other Justices concurred.

## ON REHEARING.

Hooker, J. As will be seen by the former opinion in this cause (*ante*, 127), complainant's bill was dismissed not because of the righteousness of the defendants' conduct and claims, but because of what appeared to be a design to hinder creditors. Afterwards our attention was called to the fact that the property in controversy was the homestead of the complainant, and a rehearing was granted to consider the question. We cannot consider the affidavit filed as evidence in the case, but we think the evidence in the record, though slight, is sufficient to warrant us in finding that the property was a homestead, and it necessarily follows, under our decisions, that the complainant was at liberty to make such disposition of it as he chose, as it was not subject to the claims of creditors, and his intent would not affect his rights. The bill does not mention the fact that this was a home-

stead, and it was perhaps unnecessary, as it became important only in answer to the defendants' claim that the conveyance was in fraud of creditors. Upon consideration of this point, we are of the opinion that our former decree did an injustice, and it is therefore vacated, and one will be entered affirming the decree of the circuit court, with costs. As our attention was not called to the homestead question until the motion for rehearing was made, no costs upon rehearing will be allowed.

The other Justices concurred.